Michael D. **BURKART**, Appellant,

v.

**HEALTH & TENNIS CORPORATION OF AMERICA, INC.**, Appellee.

No. 05–86–00777–CV.

Court of Appeals of Texas, Dallas.

April 20, 1987.

Alfred W. Ellis, Dallas, for appellant.

Sidney H. Davis, Jr., Dallas, for appellee.

Before HOWELL, McCLUNG and McCRAW, JJ.

McCLUNG, Justice.

Burkart appeals a take-nothing judgment in favor of the Health & Tennis Corporation of America, individually and doing business as the President's Health and Racquetball Club (Club). Finding no merit in his complaints, we affirm the judgment of the trial court.

Burkart was using a Gravity Gym at the Club on January 11, 1984 when he sustained the injuries made the basis of his lawsuit. Gravity Gym is a machine designed to permit the user to suspend himself upside down. The record indicates that in this position the user is stabilized and supported, in part, by Velcro-attached footpads. Burkart mounted the machine and was hanging upside down performing a type of exercise termed "crunches." While performing these crunches, Burkart came loose from the machine, fell onto the floor, and was injured. Burkart was taken directly to a hospital where he remained until his discharge on February 8, 1984. At the time of trial Burkart suffered from a permanent partial paralysis and required several medications daily.

This action was originally brought against the Club and the Gravity Gym manufacturer, alleging negligence plus products liability as to the manufacturer. On the day of trial, Burkart settled with the manufacturer and trial proceeded with the Club as sole defendant.

During the trial, Burkart introduced evidence that the Gravity Gym was unreasonably dangerous. With leave of the court, the Club amended its pleadings to conform to the evidence, and special issues on products liability were eventually submitted to the jury. Special issues inquiring into the negligence of the Club and of Burkart were also submitted. The jury found that the Club committed no acts of negligence that proximately caused Burkart's injuries. The trial court accepted the jury findings

and entered a judgment that Burkart take nothing by his action against the Club.

In five of his first six points of error Burkart invokes the fact-finding jurisdiction of this Court to review the evidence. The standard of review is the same and will not be repeated under discussion of each point, except in a shorthand expression. That standard was recently discussed in *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex.1986): Where points of error claim that jury answers to special issues are against the great weight and preponderance of the evidence, this Court is required to consider and weigh all of the evidence in determining whether the evidence is sufficient or if an answer is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pool*, 715 S.W.2d at 635. We have carefully reviewed the entire record and with this standard in mind, we address Burkart's points of error.

■ In his first point of error, Burkart asserts that the jury finding that the Club did not fail to instruct Burkart in the correct manner to use the Gravity Gym is against the great weight and preponderance of the evidence. Some testimony opposed this finding; other testimony supported it. Burkart testified that he was told how to use the machine but was not told how to use the footpad. One employee who came to Burkart's aid after the fall testified that he saw Burkart mounted on the machine improperly. This employee also testified that, as a member, he was never instructed on the use of the Gravity Gym. Several employees testified that instruction on this machine to members was not standard and would be given only if requested. One expert testified that the Club was negligent for failing to post signs near the Gravity Gym; the Club did not present evidence that signs explaining use of the machine were posted and employees testified that, in fact, there were no signs. Another expert, the supervisor of the Olympic Center in Denver, Colorado, testified that it was customary in the industry for the health club to instruct users and monitor this type of equipment for misuse.

Testimony as to the correct manner to use the Gravity Gym was contradictory because it indicated that: (1) the machine was only for hanging and not crunching; (2) the machine was good for crunching; (3) there was no incorrect way to use the machine; (4) there were several correct ways; (5) there was one correct way; (6) the footpad was to be used in a certain way; (7) the footpad could be used several ways; and (8) the machine could be used without the footpad. Several employees testified that they were able to use the machine and correctly used the machine despite never having been instructed in its use. One expert testified that it would have been reasonable for the manufacturer to permanently affix instructions to the machine. Another expert felt that the machine was dangerous because unfit and nonathletic types of people would use the machine. Burkart testified that he was athletic. His assessment was confirmed by his former fiancee, director of athletics for Highland Park Presbyterian Church, and Burkart's former college fraternity brother. Legitimate inferences from this testimony supporting the jury finding include: (1) use of the machine was self-explanatory, especially to an athlete like Burkart, so that "no" instructions were the "correct" instructions; and (2) there were several correct ways to use the machine so that what Burkart said he was told was a correct way. We conclude that the jury's finding that the Club did not fail to instruct Burkart in the correct manner to use the Gravity Gym is supported by sufficient evidence and is not against the great weight and preponderance of the evidence. Point of error one is overruled.

■ Burkart next challenges the jury finding that the Club did not fail to properly supervise the activities of Burkart. Evidence conflicted on this finding also. Two employees and Burkart testified that they came to his aid immediately after the fall. One expert testified that the Club suffered from a lack of supervision. A defendant's expert testimony was that even with proper instruction the machine could be used improperly in a dangerous manner, implying

that a user should be closely watched. One employee, in fact, testified that he noticed Burkart mounted on the Gravity Gym machine improperly. On the other hand, another employee testified that no matter how he personally mounted the Gym, he could not fall off. Also indicating that less supervision was needed was testimony that Burkart was independent, athletic, and a leader. Finally, testimony and demonstrations indicated that the Gravity Gym is easy to use. We hold that the jury finding that the Club did not fail to properly supervise the activities of Burkart is supported by sufficient evidence and is not against the great weight and preponderance of the evidence. Point of error two is overruled.

■ Burkart next challenges the jury finding that the Club did not fail to properly inspect the Gravity Gym. Appellant points to testimony which, he contends, shows that the inspection of the Velcro straps on the footpad was cursory. Other testimony by one of these same witnesses indicated that she inspected the Gravity Gym daily and worked out on it three times per week. Testimony indicated that the Gravity Gym was trouble-free, implying it required little inspection. Testimony that the machine was put on the maintenance list but not repaired indicates that the machine was inspected; it just was not fixed. This testimony supports the challenged finding. Testimony indicated that Velcro does not wear out and that the Velcro on this particular Gym was fine immediately after the accident. We hold that the finding that the Club did not fail to properly inspect the Gravity Gym is supported by sufficient evidence and is not against the great weight and preponderance of the evidence. Point of error three is overruled.

■ In his fourth point of error, Burkart challenges the jury finding that the Club did not fail to modify the Gravity Gym in accordance with the manufacturer's recommendations. Evidence indicated that Gravity Gyms at other locations had been modified. Evidence indicated that changes to this Gravity Gym were suggested. However, there is no evidence to indicate that the manufacturer recommended to the

Club that this particular Gravity Gym be modified. We hold that the finding that the Club did not fail to modify the Gravity Gym in accordance with the manufacturer's recommendations is supported by sufficient evidence and is not against the great weight and preponderance of the evidence. Point of error four is overruled.

■ In his fifth point of error, Burkart challenges the finding that the Club's negligent failure to instruct its employees in the correct manner to use the Gravity Gym was not a proximate cause of damage to Burkart. Burkart's argument boils down to the proposition that it was illogical for the jury to find a failure to instruct and that such conduct was negligent but to further find that such negligence did not cause his injury. We acknowledge the existence of some testimony that such a failure did cause Burkart's injury. Burkart admitted he received some instruction. Other evidence, including demonstrations before the jury, indicated that the instructions which Burkart received were correct. Additional evidence indicated that an athlete like Burkart needed no instruction to use the Gravity Gym. Further, one employee testified that he was not able to repeat Burkart's fall no matter how he mounted the machine. We hold that the jury finding that the Club's negligent failure to instruct employees in the correct manner to use the Gravity Gym was not a proximate cause of damage to Burkart is supported by sufficient evidence and is not against the great weight and preponderance of the evidence. Point of error five is overruled.

■ In his sixth point of error, Burkart complains about instructions given in response to a jury question. Both parties agreed to the additional instructions and no objections were made. Burkart cannot now complain about them. TEX.R.APP.P. 52. Point of error six is overruled.

■ Burkart's remaining points of error relate to special issues concerning his own negligence and the liability of the manufacturer; they do not relate to the liability of the Club. The liability of the Club has,

therefore, been determined and remand is improper regardless of any holdings on the remaining points. *Methodist Hospitals v. Sullivan,* 714 S.W.2d 302, 303 (Tex.1986); TEX.R.APP.P. 90(a). Consequently, we decline to review these points because our holdings on the first six points are dispositive of Burkart's appeal.

The judgment of the trial court is affirmed.